ACCEPTED
01-15-00469-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/18/2015 11:32:22 AM
CHRISTOPHER PRINE
CLERK

No. 01-15-00469-CV

_____

**IN THE COURT OF APPEALS
FOR THE FIRST JUDICIAL DISTRICT
OF TEXAS AT HOUSTON**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/18/2015 11:32:22 AM
CHRISTOPHER A. PRINE
Clerk

_____

**IN THE INTEREST OF
J-M. A.Y., Child**

_____

**J.J.K. Appellant**

**v.**

**DEPARTMENT OF FAMILY & PROTECTIVE SERVICES, Appellee**

_____

**APPEALED FROM THE 313th DISTRICT COURT OF HARRIS COUNTY,
TEXAS, Trial Cause No. 2014-01481J**

_____

**APPELLEE'S  BRIEF**

VINCE RYAN, COUNTY ATTORNEY
State Bar #99999939
By:  Sandra Hachem
State Bar No.  08667060
Assistant County Attorney
1019 Congress, 17th Floor
Houston, Texas 77002
Telephone:  (713) 274-5293
Facsimile:  (713) 713/437-4700
Email: sandra.hachem@cao.hctx.net
ATTORNEY FOR APPELLEE,
DEPARTMENT OF FAMILY &
PROTECTIVE SERVICES

ORAL ARGUMENT REQUESTED [If Deemed Necessary]

# TABLE  OF  CONTENTS

Table of Contents ..................................................................................... ii

Index of Authorities .................................................................................. iii

Statement of the Case ..................................................................................v

Reply Point ...................................................................................................v

Statement of Facts ........................................................................................1

Summary of Argument...............................................................................19

Argument and Authorities..........................................................................22

**REPLY POINT: The evidence sufficiently supported the court's decision to terminate JJK's parental rights ........................................22**

    **1) Applicable Law and Standard of Review ...........................................22**
    **2) The undisputed evidence of JJK's pattern of illegal drug activities, before and after her children were born, as well as after they came in State care, provided sufficient proof that she endangered her children for findings under Subsections (D) and (E) of Section 161.001(1) of the Family Code. ............................25**
    **3) Though review of O ground is unnecessary JJK's admission that she violated her court ordered service plan by engaging in illegal drug use and failing to complete tasks supported the court's finding under subsection (O). ....................................................29**
    **4) The evidence supporting the court's findings under Subsections D, E and O of Section 161.001(1) of the Family Code adequately supported the court's finding that termination was in the children's best interest....................................30**

Prayer for Relief.........................................................................................34
Certificate of Service .................................................................................34
Certificate of Compliance With Word Count..............................................35
Appendix ..........................................................................................(attached)

# INDEX OF AUTHORITIES

**CASES**                                                                     **PAGE**

*In re A.L.W.*, No. 01-14-00805-CV, 2015 WL 4262754
(Tex. App.—Houston [1st Dist.] 2015, no pet.) (mem. op.) ...............................31

*In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003)..................................................22, 29

*In re B.B.,* 971 S.W.2d 160 (Tex. App.—Beaumont 1998, pet. denied)..................26

*In re B.H.*, No. 01-10-00415-CV, 2011 WL 4501940 (Tex. App.—Houston
[1st Dis.] 2011, no pet.) (mem. op.).........................................................................28

*In re C.H.*, 89 S.W.3d 17 (Tex. 2002) .........................................................23, 24, 33

*Callahan v. Brazoria County Child Prot.Servs. Unit.*, 2003 WL 2199952
(Tex. App.—Houston [1st Dist.] 2003, no pet.) (mem. op.)................................28

*In re D.J.W.*, 394 S.W.3d 210 (Tex. App.—Houston [1st Dist.]
2012, pet. denied). ...............................................................................................27

*In re E.A.F.,* 424 S.W.3d 742 (Tex. App.—Houston [14th Dist.]
2014, pet. denied)...........................................................................................23, 29

*Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976), .....................................................30

*IKB Indus (Nigeria) Ltd. v. Pro Line Corp.*, 938 S.W.2d 440 (Tex. 1997)..............23

*In re I.R.,* No. 14-14-00626-CV, 2014 WL 6854747 (Tex. App.—Houston
[14th Dist.] 2014, no pet.)..................................................................................32

*In re. J.F.C.,* 96 S.W.3d 256 (Tex. 2002) ........................................................23, 24

*In re J.O.A.*, 183 S.W.3d 336 (Tex. 2009)..............................................................27

*Jordan v. Dossey*, 325 S.W.3d 700 (Tex. App.—Houston
[1st Dist.] 2010, pet. denied)..............................................................................33

*In re J.T.G.*, 121 S.W.3d 117 (Tex. App.—Fort Worth 2003, no pet.)......................28

*Latham v. Dep't of Family & Protective Servs*., 177 S.W.3d 341
  (Tex. App.—Houston [1st Dist.] 2005, no pet.)....................................................27

*P.W. v. Dept of Fam. & Prot. Servs.*, 403 S.W.3d 471
  (Tex. App.—Houston [1st Dist.] 2013, pet. dism'd w.o.j.)..................................32

*In re S.R.*, No. 14-14-00393-CV, 2014 WL 5898453 (Tex. App.—
  Houston [14th Dist.] 2014, no pet.) ....................................................................28

*Texas Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531 (Tex.1987) ........................25

*In re D.J.W.*, 394 S.W.3d 210, 221 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)

## STATUTES

Tex. Fam. Code Ann. § 101.007 (West 2008)........................................................24

Tex. Fam. Code Ann. § 161.001 (West 2008)................ v, 19, 20, 22, 23, 24, 29, 30

Tex. Fam. Code Ann. § 263.307 (West 2008)..................................................30, 31

## RULES

Tex. R. Civ. P. 306..........................................................................................v, 23

iv

## STATMEMENT OF THE CASE

This brief responds to the brief brought by JJK[1] from a parental termination judgment. CR[2] 77. On April 29, 2015, after a full bench trial, the trial court signed a judgment that terminated the parental rights of JJK, TC and JY[3] and appointed the Department as the child's sole managing conservator.[4] CR 78-80. Per Tex. R. Civ. P. 306, the judgment recited that the parental rights of JJK were terminated because it was in the child's best interest and based on Texas Family Code §161.001(1)(D), (E), and (O). CR 78-80. On May 19, 2015, JJK filed a timely notice of appeal. CR 108. No motion for new trial was filed and no other parent filed a notice of appeal. In this appeal, the Appellant's brief of JJK challenges the sufficiency of the evidence to support the findings under Section 161.001(1)(E) and (2) of the Family Code to warrant parental termination, but does not challenge the court's findings under Section 161.001(1)(D) and (O) or the court's decision to appoint the Department as sole managing conservator.

## REPLY POINT

**The evidence sufficiently supported the court's decision to terminate JJK's parental rights.**

---

[1] In this brief, "JJK" refers to the mother, the appellant in this case.
[2] In this brief, "CR" refers to the Clerk's Record filed in this appeal.
[3] In this brief, "TC" and "JY" refer to the two fathers in this case. They did not appeal.
[4] The decree also denied all relief sought by the intervenor, RJ. CR 79. RJ did not appeal.

No. 01-15-00469-CV
_____

IN THE COURT OF APPEALS
FOR THE FIRST JUDICIAL DISTRICT
OF TEXAS AT HOUSTON
_____

IN THE INTEREST OF
J-M. A.Y., Child
_____

**J.J.K. Appellant**

v.

**DEPARTMENT OF FAMILY & PROTECTIVE SERVICES, Appellee**
_____

**APPELLEE'S BRIEF**

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Department of Family & Protective Services, Appellee, [hereinafter "Department"] submits this brief in response to the Appellant's Brief of JJK.

## STATEMENT OF FACTS

In the early spring of 2007, JJK gave birth to a son (TJC).[5] RR-4[6] p. 12. TC was listed on the birth certificate as the child's father. RR-4 p. 12. When their son was born, JJK was almost 20 years old and TC was about 24. RR-4 p. 12 (JJK:

---

[5] In this brief, "TJC" refers to the first child born by JJK in 2007.
[6] In this brief, "RR-4" refers to the fourth volume of the reporter's record which has the exhibits admitted at trial.

DOB 1/25/87; TC: DOB 1/25/1987). JJK was not married to TC but they had an ongoing relationship and she was with him until she was five months pregnant. RR-3[7] p. 23.

TC and JJK would use marijuana together. RR-3 p. 90. TC had been using marijuana since he was about 21. RR-3 p. 91. Not surprisingly, as a consequence, he had long history of drug related convictions related to marijuana even before he met JJK. RR-4 p. 91; RR-4 p. 80-82 (2005 possession marijuana); RR-4 p. 85 (2006 possession marijuana); RR-4 p. 96 (2003 possession marijuana); RR-4 p. 100-02 (2000 possession marijuana); RR-4 p. 110-12 (possession marijuana on school premises). He got his first conviction for drug related activities after their son was born on September 27, 2008 when he was arrested for concealing marijuana with intent to impair its availability. RR-4 p. 73.

About a month later, on October 25, 2008, when their son was less than a year old, TC painfully struck JJK with pool equipment and several employees had to stop him from committing further violence. RR-4 p. 90. The father was subsequently charged with assault causing bodily injury-family violence. RR-4 p. 90. It was noted on his complaint that he also had related cases for "criminal mischief, evading arr … and interference w/emg call." RR-4 p. 90.

The next month, TC pled guilty to his earlier tampering with evidence

---

[7] "RR-3" refers to the third volume of the reporter's record – the transcript of testimony from trial.

charge and received 90 days in the county jail under the terms of a plea bargain on November 13, 2008. RR-4 p. 76. About eight months later, on June 8, 2009, TC was arrested for possessing a controlled substance (alprazolam) in a drug-free zone of a high school. RR-4 p. 58. He was also arrested for possessing marijuana. RR-4 p. 64. He later pled guilty on both and received jail time. RR-4 p. 60 and p. 66.

In August 2009, the child's mother (JJK) got her first illegal drug conviction when she pled guilty to possession of marijuana and was sentenced 10 days in the county jail. RR-4 p. 45. The Department received an allegation on the parents that same month. RR-4 p. 117. That same year, the child's father (TC) was sentenced to 150 days in jail for the earlier assault he committed against JJK. RR-4 p. 93.

In the late spring of 2011, JJK gave birth to a second son (JAY).[8] RR-4 p. 14. His father was JY. RR-3 p. 116. The next year, on August 14, 2012, the Department received a referral listing JJK as a perpetrator in an incident involving both children as victims. RR-4 p. 117.

In 2013, TC was charged with another offense involving family violence and upon pleading guilty he received a five-year sentence and community supervision. RR-4 p. 51-54. The terms of the community supervision restricted TC from contacting the complainant, Monique Perry. RR-4 p. 54. Before the end of 2013, the Department received two more referrals concerning the children. RR-4 p. 117.

---

[8] In this brief "JAY" refers to the second child born to JJK in 2011.

In 2014, when the children were about two and seven years of age, the Department received a referral that JJK allowed her son to buy weed with an uncle and JJK was smoking marijuana while the children were present. RR-4 p. 16. It was reported that the mother had a mental illness and was not on her medication and that the Department had experience with her in the past where she used other people's urine to pass a drug test. RR-4 p. 16.

On March 18, 2014, the Department filed an original petition that included an affidavit requesting removal of the child into the Department's care. CR 3; Appendix,[9] Attachment 1. The Department took emergency temporary custody of the children on March 2, 2014. RR-3 p. 95. The court signed an order when the Department's suit was filed ordering the clerk to issue notice to the parents that they must appear before the court on April 1, 2014. Appendix, Attachment 2. In compliance with that order, JJK appeared in the courtroom on April 1, 2014 where the suit was formally executed to confirm personal service upon JJK. RR-4 p. 6.

After the hearing on April 1, the Court signed an order that appointed the Department as the children's temporary managing conservator. RR-4 p. 116; Appendix, Attachment 3. The court's order also included a warning in bolded print that notified the parents that compliance with the requirements in the Department's

---

[9] The items that are in the appendix do not appear in the current Clerk's Record, but the undersigned attorney has prepared a letter to the clerk's office requesting that these documents be supplemented in the current record.

service plan would be necessary for reunification and failure to comply could result in restriction or termination of parental rights. Appendix, Attachment 3 p. 6.

The court signed a separate order on April 1, 2014 that required JJK and the alleged fathers to submit to drug testing. Appendix, Attachment 4. In compliance with that order, JJK submitted to a drug test and the report that came back from Quest Diagnostics indicated positive results for cocaine and marijuana. RR-4 p. 128 and 130. The father, JY, also submitted to a drug test on that date and his test revealed a positive result for marijuana. RR-4 p. 168. TC submitted hair for a drug test the next month, and it showed positive results for marijuana. RR-4 p. 156.

A service plan for JJK was prepared and filed with the court that same month that stated the Department's initial concerns on 4/18/2014 as follows:

> [JAY] is two years old under the age of five. [TJC] is 7 years old. Both children are unable to protect themselves from danger.
>
> [JJK] is significantly lacking knowledge of child development and the parenting skills needed to meet any child behavioral and developmental needs. [JJK] discipline practices for the children seem violent and out of control. [JJK] has mental illness of bipolar and is abusing drugs and alcohol. The parents engage in criminal active of selling drugs. The parents ware children of CPS and suffer from abuse and neglect.
>
> The parents needy and self-centered needs are placed inappropriately above the needs of the children. [JJK] has allowed the children to be inadequately supervised, while she and other around the children engage in using drugs.

The parents appear unwilling or unable to meet any child's immediate needs that might result in Immediate danger of serious harm. [JJK] has two prior abuse/neglect Investigation by CPS.

[JJK] home is crowded/chaotic that responsibility for caregiving is unclear, leading no one to assume responsibility for the children. The behaviors of the household member expose children to danger. The parents have history of criminal involvement, violent behavior, and have been a victim of family violence.

[JJK] deny, seem unaware of, and take the allegations less seriously than DFPS. [JJK] was hostile toward or refusing to cooperate with DFPS at the investigation stage of the case.

[JJK] appear unwilling or unable to protect any child from other persons who may inflict serious harm.

RR-4 p. 17; CR 40.

The service plan include numerous tasks to meet the stated goals including: participation in anger management, domestic violence classes, psychiatric and psycho-social evaluations, parenting classes, drug and alcohol assessment and recommendations, random drug testing, maintain employment and housing for more than 6 months, maintain visits with the children, refrain from illegal activities and contact the caseworker in the event of a change in address. RR-4 p. 18-20. The court signed an order on April 13, 2015 that approved the service plan filed with the court. CR 73. JJK signed the plan on April 21, 2014. RR-4 p. 22.

On July 10, 2014, JJK was tested for drugs and her hair specimen test indicated positive results for cocaine and marijuana. RR-4 p. 138. In August, it was reported by the drug laboratory that there was insufficient specimen quantity for a

complete analysis. RR-4 p. 143. In December of 2014, the hair specimen was tested and indicated positive results for cocaine and marijuana. RR-4 p. 146.

In February of 2015, the Department filed a report on the status of the case. RR-4 p. 115. The report noted several items that JJK successfully completed. Namely, she had been successfully discharged from individual therapy and completed her parenting and anger management classes. RR-4 p. 123. She had done her drug and alcohol assessment and was attending outpatient counseling. RR-4 p. 13. She had not provided a lease but stated she was living with her mother. RR-4 p. 123. Also, she was employed at her sister's hair salon. RR-4 p. 123. Nevertheless, there had been some positive drug tests, she no showed for some and tested positive for cocaine and marijuana as recently as December 9, 2014. RR-4 p. 123. The report recommended termination of the parent's rights to allow the maternal grandfather[10] to adopt both children. RR-4 p. 124. In March, a hair specimen was taken from JJK and the laboratory test indicated positive results for cocaine and marijuana. RR-4 p. 151.

On April 2, 2015, trial commenced. RR-2[11] p. 1. The first witness was Bruce Jefferies, Owner of the National Screening Center. RR-2 p. 12. He was asked to comment on JJK's drug results. RR-2 p. 14. He stated her hair specimen

---

[10] In the brief, the maternal grandfather will be referred to as "Mr. King."
[11] In this brief, "RR-2" refers to the second volume of the reporter's record. The first day of testimony at trial.

test in April of 2014 showed positive results for methamphetamine, cocaine and marijuana on the outside and inside of her hair and a urine test showed a positive result for marijuana. RR-2 p. 14. He stated her next zero tolerance hair test on May 6, 2014 was positive for cocaine and marijuana. RR-2 p. 14. He stated there also was a positive result for xanax. RR-2 p. 14.

At her next drug test in July, there was positive results for cocaine and marijuana and xanax. RR-2 pp. 14-15. Her August test was positive for marijuana on the outside of her hair and her urine test was positive for xanax. RR-2 p. 15. In December, her hair again tested positive for cocaine and marijuana and again she tested positive for xanax. RR-2 p. 15. Mr. Jeffries stated that her March 2015 hair test was positive for cocaine and marijuana and her urine test was positive in the benzodiazepines family for xanax. RR-2 p. 16.

At the end of Mr. Jeffries' testimony, the case was recessed and resumed on April 13, 2015. RR-3 p. 1. JJK was then called to testify. RR-3 p. 7.

JJK claimed that her children came into care on a false accusation of drug use. RR-3 p. 8. She acknowledged, however, that she was positive for marijuana and cocaine during this case. RR-3 p. 11. JJK said she heard the testimony from Mr. Jeffries indicating she was using cocaine throughout, but she stated she did not do cocaine – just marijuana. RR-3 p. 11-12. She stated she tested positive for cocaine, because she was selling cocaine in the beginning. RR-3 p. 12.

JJK stated she signed her Family Plan of Service and it was explained to her that by completing it that would be a way of regaining custody of her children. RR-3 p. 14. She stated she did all of her services, but was unsuccessfully discharged from two of them: group and drug counseling. RR-3 p. 14. She stated she was unsuccessfully discharged from drug counseling because they found cocaine in her hair in December. RR-3 p. 15. She acknowledged part of her plan of service was to test negative, and she did not test negative on all. RR-3 p. 15-16.

JJK stated she was currently employed as a hair stylist. RR-3 p. 16. She stated she goes to her clients, because she was in the process of moving. RR-3 p. 16. She stated she moved in with her mom when her lease was up, because she did not know what was going to happen in her case. RR-3 p. 17.

JJK stated despite the support of her family she still used drugs, but corrected herself and said: "I'm lyin'. I only used drugs in the beginning when ya'll – when the case started, that when I stopped. I have not used since March 11[th]" … "2014." RR-3 p. 19-20.

She stated the only thing she did was marijuana and selling crack. RR-3 p. 21. She stated she would buy the crack and double her money. RR-3 p. 22. She stated that she receives a check from the government for $700 every month for her children. RR-3 p. 22.

JJK stated she was never married. RR-3 p. 22. JJK acknowledged that her

first child's father, TC, was arrested and convicted several times and she filed charges on him. RR-3 p. 28. She stated she had a relationship with TC for a year, but broke up with him when she was five months pregnant because he was very abusive and also did very violent things. RR-3 p. 23 and p. 27. She described one violent incident as follows:

> Oh, he put a whole shoe on my car by the gas tank in front of my mama's house, lit it on fire, waited 'til it go to this much of the sole, (indicates) call my mamma and told my mama if she don't want us to die that she may want to get that fire out the yard.

RR-3 p. 27. She stated that TC had been paying child support but was behind. RR-3 p. 24. She indicated the money goes to a debit card and the card was still in her name. RR-3 p. 24.

JJK stated that her father was part of her support system and had her children. RR-3 p. 29. JJK stated that her father had a lot of rules if she wanted to be around him and the children. RR-3 p. 34. She stated she did not want her children in CPS but would rather them be with her daddy and added "His daddy wouldn't take them." RR-3 p.30.

She stated that her daddy takes her children to school, makes them great meals, they mow the yard together and do manly things. RR-3 p. 30. She stated she takes fault for the first case in 2009 and 2014 but she wanted to be part of her kid's lives. RR-3 p. 31 & 48. JJK acknowledged it was not fair that her children had been in CPS custody three times in their lives. RR-3 p. 48. She stated she

won't do any more drugs around them, but if they stay with her dad she would have no problem with that. RR-3 p. 31.

JJK stated she started selling cocaine around her grandmother's birthday in January of 2014 until March when they came knocking on her door. RR-3 p. 32-33. She stated if they never knocked on her door she would still have been selling. RR-3 p. 33.

JJK said her disability is anxiety, bipolar and major depression and she gets a check for 725. RR-3 p. 43. She stated she is on meds. RR-3 p. 44. She stated she gets about 400 a month doing hair. RR-3 p. 46. She stated she also gets child support so her month income is about $1500 roughly. RR-3 p. 47.

The next witness was TC. RR-3 p. 49. He stated he was the father of TJC. RR-3 p. 49-50. He stated that JJK made a false accusation to police saying he put his hands on her and the only reason he took the conviction was because he was already going to TDC and at county jail they wake you up extra early. RR-3 p. 51. He added he also did not want to come back to court. RR-3 p. 51. He confirmed the plea he took for 15 months dealt with felony possession of 5 pounds of marijuana. RR-3 p. 51. The plea also included a charge for delivery of a controlled substance and he described the controlled substance as pills "she be testing positive for." RR-3 p. 51-52.

TC acknowledged that he did not complete his Family Plan of Service. RR-

3 p. 56. In particular, he acknowledged he had not completed anger management or domestic violence and did not make all his drug tests. RR-3 p. 56. He also admitted he did not participate in the recommendation made on his drug and alcohol assessment and did not do parenting classes. RR-3 p. 57.

TC admitted during his visits while this case was pending, his visits had to be suspended because he had a few altercations and had to be escorted off the premises. RR-3 p. 57-58. His last visit was at Christmas. RR-3 p. 58.

TC stated he did not know the mother's father but commented: "He good people." RR-3 p. 58. He commented that he raised three kids. RR-3 p. 70. Two of them turned out but one was trouble. RR-3 p. 70. He commented that he had allowed him to visit when "they" let him, but he was not currently doing so and so he instead spoke with his son by phone. RR-3 p. 69. He added that he believed Mr. King would do the best he could to care for the child if placed with him forever, but did not think he would protect him from the mother. RR-3 p. 60. When asked to explain why he believed Mr. King could not protect the child from the mother, he responded that he believed she was crazy and would probably jump through a window. RR-3 p. 76.

TC stated he did not want his son going back to the child's mother and his main concern was getting his child out of the "f----- -- situation that he was in with his mother." RR-3 p. 59. He stated that his son told him he was hit by his mother.

RR-3 p. 80. He also told him that he saw his mother get in physical altercations with other men when he was around. RR-3 p. 80. He stated he thought his child was making it up when he said his mommy and boyfriends hit him until he saw something cleaning his mouth. RR-3 p. 89. Then when he got word his son was walking with some grown man to the weed man, that was enough and he called CPS. RR-3 p. 89.

TC stated he currently has a significant other living with him who was a hospital nurse. RR-3 p. 68. He stated she was making a pretty good living. RR-3 p. 68. He stated he had been with her about five years but did not want to marry her. RRR-3 p. 74.

TC stated he dated JJK for about a year, and admitted they did marijuana together. RR-3 p. 90. He admitted he was charged with something violent against her but claimed it was false. RR-3 p. 64. He stated he did not have a relationship with her currently but would like to have a relationship with her as a friend. RR-3 p. 75. He stated he did not want her not to have her kids, but she's on drugs. RR-3 p. 76. However, if she could show she could keep her nose clean and not do drugs, he would not want to keep her from the kids. RR-3 p. 76. Before the next witness testified, TC, the father of TJC, signed an irrevocable affidavit to relinquish his parental rights that was admitted into evidence. RR-3 p. 93-94; RR-4 p. 190.

The next witness was the caseworker, Christina McKinney. RR-3 p. 94-95.

She stated that she was the current caseworker for both of the children. RR-3 p. 95. She stated that the children were currently placed with the maternal grandfather (Mr. King) and had been there since August of 2014. RR-3 p. 95. She stated the children were doing well and did not have special needs, but TJC had some issues acting out in school that were being worked on. RR-3 p. 96. She noted despite his conduct, he made all A's. RR-3 p. 96.

Cristina stated that she believed the maternal grandfather could provide the children a drug-free environment safe and stable environment and would be protective of them. RR-3 p. 103. Cristina stated she believed the children's current placement was meeting their physical and emotional needs, and the Department's desire was for Mr. King to be able to adopt the children. RR-3 p. 96-97. Cristina acknowledged that Mr. King did not originally want the parents' rights terminated and wanted them to get their lives together, but Mr. King became willing to adopt the children to continue to offer them a safe and stable home. RR-3 p. 117-18.

Cristina stated that JJK consistently tested positive for multiple drugs while this case was pending, and specifically: marijuana and cocaine. RR-3 p. 97. She stated that she believed the mother's conduct endangered the children, because she allowed her kids to be around drugs and did not display proper behavior to them. RR-3 p. 97. She noted she was doing better, but her drugs were still an issue and still untreated. RR-3 p. 97. She stated the mother had produced negative UAs, but

never provided a negative hair follicle test. RR-3 p. 98.

Cristina stated she went over the Family Plan of Service with JJK and was available for any additional questions throughout this case. RR-3 p. 98-99. Nevertheless, she had not completed her Family Plan of Service. RR-3 p. 99. She did not complete her drug recommendations to be enrolled in in-patient due to her continuing use and testing positive for cocaine. RR-3 p. 99. Also, she failed to submit to a test to ensure she was taking her medications for bipolar and depression. RR-3 p. 99.

When asked why the Department determined the children should not be returned to the mother, she noted the mother was unsuccessfully discharged from drug treatment which was the very reason the children came in care and she continued to use drugs throughout. RR-3 p. 107. Cristina acknowledged the mother produced drug testing through TADS system and those were negative. RR-3 p. 107. There also was a point at a December hearing that there had been talk of possibly returning the children to the mom because she had stopped testing positive for cocaine and was only using marijuana and the levels went down. RR-3 p. 110. However, after the December hearing a drug test came back that showed she tested positive for cocaine again. RR-3 p. 110; and pp. 112-13. She stated the mother then tested for cocaine not only in December, but again in March of 2015. RR-3 p. 114. Her failure to stay clean was criminal conduct that failed her service

plan. RR-3 p. 111.

Cristina further added that the oldest child personally told her that he was afraid of his mother and stated that she punched and hit him on his arm and leg. RR-3 p. 116. He also disclosed at many points at the beginning of the case that he was not only around marijuana but it was being smoked in the same room with him. RR-3 p. 116. Cristina also noted that the children had been in and out of CPS custody at least three different times in their lives and deserved to live in a safe and stable environment that's drug free. RR-3 p. 116.

Cristina stated that they attempted to reach out to Mr. Young, but the last time she spoke to him was at a status hearing. RR-3 p. 100. She stated he signed his plan of service and indicated he needed to get his child back. RR-3 p. 101. Nevertheless, he did not follow the recommendations from his psychosocial assessment and drug assessment and tested positive for marijuana while this case was pending. RR-3 p. 101. She stated that he made the statement in the courtroom at the status hearing that he was done with CPS. RR-3 p. 102. Consequently, based on his lack of involvement, she did not believe he wanted to parent JAY. RR-3 p. 102.

The next witness was Beresford Clarke, a volunteer on this case since May of 2014. RR-3 p. 119. She stated that child advocates was recommending that Mr. King have PMC, was not in support of termination and wanted the case to continue

longer so "he" could qualify for care assistance. RR-3 p. 120. A child advocate's coordinator, Quana Smith, then interrupted and said the reason they did not support termination was because the caregiver did not want to adopt, and they were trying to give him a chance to meet the requirements for PCA benefits. RR-3 p. 121. Nonetheless, Beresford stated if the court terminated the parents' rights, they would want Mr. King to adopt. RR-3 p. 122. Beresford later stated she believed the mom's parental rights should be terminated. RR-3 p. 125.

Beresford stated child advocates believed PMC versus adoption was better for the children, however, because Mr. King stated, even that day, that he would prefer PMC. RR-3 p. 123. In further clarification, Beresford stated that the eventual goal they wanted was for Mr. King to obtain some assistance and eventually adopt. RR-3 p. 124. She stated, however, if by adoption he got financial assistance they would opt for adoption. RR-3 p. 126.

The next witness was Jerry King, the maternal grandfather who was the placement for the two children. RR-3 p. 128-29. He stated that the children were in his home since August of 2014, that they were doing good and did not have behavioral issues. RR-3 p. 129.

He stated he was willing to act as long-term placement for the children, and if the court terminated the parental rights that day he was willing to adopt. RR-3 p. 130. He stated he would like to see his daughter get off drugs and get her kids

back and he had several conversations with her about that. RR-3 p. 131. However, he acknowledged she accused him of trying to take her children away from her all the time even though he told her he never did that. RR-3 p. 132-33. He stated he would do whatever he had to in order to protect the children. RR-3 p. 132. He also said that the children were set financially and he did not really need an adoption subsidy. RR-3 p. 132. Mr. King stated he was a technician and worked in air conditioning for MD Anderson for 41 years. RR-3 p. 136.

Mr. King stated that he would allow the parents to have contact with the children supervised, because he believed they needed it. RR-3 p. 134. Moreover, he hoped, regardless of what the court decides that the parents would get their lives together. RR-3 p. 134.

JJK was recalled to testify in her case in chief. RR-3 p. 138. She stated about a month prior after she had been testing positive for cocaine in her hair every time, she was asked to go to a rehab and it was denied but then two weeks before she was asked to go to rehab. RR-3 p. 144. JJK stated: "Im not trippin' about going to a rehab. If that's what it takes to get my kids back, then I do it." RR-3 p. 144. When asked if she thought she had a drug problem, she responded: "No I don't." RR-3 p. 147. She acknowledged if she wanted to get off drugs, she could have gone to rehab and got off drugs over a year earlier. RR-3 p. 150.

JJK stated if the court is going to give the children to her daddy, she should

at least be able to assist him with homework and cook dinner. RR-3 p. 145. She stated her children were used to being with her all the time and missed her. RR-3 p. 145. She also stated that she was willing to provide however much is needed in child support. RR-3 p. 145.

When asked what her children needed most of all right that moment, she responded: "I just bought shoes and clothes." RR-3 p. 146. When asked again, she stated: "I wouldn't know. My daddy would have to answer that." RR-3 p. 146.

The caseworker, Cristina, was recalled as a witness. RR-3 p. 155. She stated she was present in court during a possible altercation between JJK and TC that same day. RR-3 p. 156. She saw JJK raise her fist and saw her dad escorting her out of the courtroom. RR-3 p. 156-57. Based on her observation, she did not believe JJK learned anything from her anger management. RR-3 p. 157.

## SUMMARY OF ARGUMENT

Appellant's Brief brings legal and factual sufficiency challenges to the evidence in support of the court's findings to terminate JJK's parental rights under Section 161.001 of the Family Code. The findings to terminate parental rights under Section 161.001 of the Family Code require that: (1) parental termination is in the child's best interest and (2) that the parent committed at least one predicate act listed under Section 161.001(1) of the Family Code. Consistent with that authority, the court found (1) parental termination in the child's best interest, and

(2) that JJK committed three predicate acts listed under Section 161.001(1): namely D, E, and O. Appellant's Brief challenges the evidence supporting the court's finding that termination was in the child's best interest but only challenges one of the predicate acts under Section 161.001(1): namely, Subsection E.

Because Appellant's brief does not address all of the predicate bases for parental termination that were included in the judgment, the unchallenged findings are binding on this court and supportive of the judgment. Consequently, there is no need for this court to review the Appellant's challenge to the court's finding under Subsection E in order to affirm the parental termination judgment. The unchallenged findings under D and O are binding and supportive of the trial court's decision of a predicate act under Section 161.001(1).

Nonetheless, there was more than sufficient proof in support of the court's finding under Subsection E based on the dangerous environment she provided to her children by virtue of her drug use and neglectful activities. The evidence showed that not only JJK but all of the alleged fathers engaged in illegal drug use and that the children were exposed to drug use in the home. The illegal drug activities of both JJK and the father of her first child, before and after the first child's birth, is undisputed. Also, after JJK's second child was born, that behavior continued and both of her children came into care because of her illegal drug use in front of the children. The drug test of the father of her second child confirmed this

father also engaged in illegal drug use. All of these facts more than adequately established that these children were born into home where they were exposed to parents who engaged in conduct that had the effect of jeopardizing their safety and well being. In addition, despite CPS involvement, and attempts to work with all of these parents, their parental neglect continued and JJK, in particular, continued to engage in illegal drug use while the children were in care which obviously jeopardized reunification, was damaging to her children emotionally and precluded stability and permanency with a biological parent.

Appellant's Brief claims there was inadequate evidence to find parental termination was in the child's best interest because the mother substantially completed most of the tasks of her service plan, had a good relationship with her children who missed her, and she could do things to support her father who was willing to adopt her children. However, that evidence disregards the undisputed fact these children were never safe in her care because of her illegal drug activities that she continued after the case was filed, and was unsuccessfully discharged from drug treatment services. Such evidence displayed a continued pattern of inappropriate and neglectful behaviors and a clear indication of her unwillingness to acquire safe behaviors within a reasonable amount of time.

What likely became most persuasive to the trial court, however, about whether the mother had actually turned around her behavior to make a relationship

possible came when the mother admitted on the stand that she would have continued selling drugs had CPS not come knocking on her door. Also, even while this case was being tried, it was observed that the mother was involved in an altercation right outside the courtroom that indicated she learned nothing from her anger management class. On this evidence, the court had more than sufficient basis to conclude that there was no assurance the mother's pattern of inappropriate behaviors had changed or that the children would have any chance of obtaining a prompt, permanent and safe home with her. In the meantime, while she failed to turnaround her behavior, the Department had been able to place these children with a grandparent who had sacrificed to take care of these children needs for several months, had provided good care for the children and expressed willingness to adopt them. On this evidence, the court made the correct decision to find parental termination was in the children's best interest so a plan of adoption and permanency could be achieved. The trial court's judgment should be affirmed.

## ARGUMENT AND AUTHORITIES

**REPLY POINT: The evidence sufficiently supported the court's decision to terminate JJK's parental rights.**

### 1) Applicable Law and Standard of Review

Section 161.001 of the Family Code was the statutory basis by which the Department sought termination of JJK's parental rights. Tex. Fam. Code Ann. §161.001 (West 2008). Section 161.001 of the Family Code authorizes termination

of parental rights on a finding by clear and convincing evidence that (1) the parent committed at least one of several predicate acts or omissions listed under section 161.001(1) of the Family Code and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. §161.001 (Vernon 2008); See *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("[o]nly one predicate finding under [Texas Family Code] section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.").

As required by Tex. R. Civ. P. 306, the decree signed in this case confirmed that Section 161.001 of the Family Code was the basis for the court's parental termination decision. CR 78-79. Namely, it recited that the court found parental termination was in the child's best interest and that JJK committed the predicate acts listed in Subsection 161.001(1) (D), (E) and O. *Id.* Appellant's Brief only challenges the predicate act of Subsection E. Since the other predicate acts are not challenged, this court need not review Subsection E to affirm the judgment for parental termination, because the findings under D and O are binding on this court. *See In re E.A.F.,* 424 S.W.3d 742, 750 (Tex. App. – Houston [14th Dist.] 2014, pet. denied); *See also IKB Indus (Nigeria) Ltd. v. Pro Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997).

Review of the appellant's challenge under the applicable standard of review requires consideration of the clear and convincing burden of proof at trial. *See In re*

*C.H.,* 89 S.W.3d 17, 25 (Tex. 2002) ("burden of proof at trial necessarily affects appellate review of the evidence."); *In the Interest of J.F.C.,* 96 S.W.3d 256, 265-66 (Tex. 2002). In that connection, both legal and factual sufficiency challenges consider the standard of proof for clear and convincing evidence by considering whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the State's allegations. *See In re C.H.*, 89 S.W.3d at p. 25 (Tex. 2002); *In re J.F.C.,* 96 S.W.3d at pp. 265-66; Tex. Fam. Code Ann. 101.007 (West 2002).

In *In re J.F.C.* the Supreme Court explained, in light of the identical inquiries made to the clear and convincing standard, the distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but clarified that there is a distinction in how the evidence is reviewed. 96 S.W.3d at p. 266. The court explained that in a legal sufficiency review, a court should look at all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true, giving appropriate deference to the trier of fact. Id. In a factual sufficiency review, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing and with respect to disputed evidence, a court should consider whether the disputed evidence is such that a reasonable factfinder

- 24 -

could not have resolved that disputed evidence in favor of its finding. Id. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. 96 S.W.3d at pp. 266-67.

**2) The undisputed evidence of JJK's pattern of illegal drug activities, before and after her children were born, as well as after they came in State care, provided sufficient proof that she endangered her children for findings under Subsections (D) and (E) of Section 161.001(1) of the Family Code.**

Both the first and second predicate findings the court found in support of the decision to terminate JJK's parental rights involved findings about endangerment to the children under Subsections D and E of Section 161.001(1) of the Family Code. Those sections involving findings that the parent:

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

Tex. Fam. Code Ann. §161.001(1)(D), (E) (West 2008).

The term "endanger," used in these sections means exposing a child to loss or injury or jeopardizing a child's emotional or physical health. *Texas Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987). As clarified by the Supreme Court, the proof for endangerment does not have to be established as an

independent proposition, but can be inferred from parental misconduct alone. *Boyd,* 727 S.W.2d at p. 533. Also, it is not necessary that the parental misconduct be directed at the child, occur in the child's presence or that the child actually suffer injury from it; and it may include evidence of conduct before the child's birth as well as before and after the child has been removed by the Department. *See In re B.B.,* 971 S.W.2d 160, 166-69 (Tex. App.—Beaumont 1998, pet. denied).

In the present case, there was undisputed proof establishing that JJK maintained a pattern of behaviors before and after her children's births that had the effect of endangering her children to support findings under both Subsections D and E based on the following evidence:

1. JJK and TC used marijuana when they were together, and JJK confirmed they were together until she was five months pregnant with her first son (TC). RR-3 p. 90 and p. 23.

2. When her first son (TJC) was two years old, in August 2009, JJK pled guilty to possessing marijuana and was sentenced 10 days in jail. RR-4 p. 45. RR-4 p. 12 (TJC born Spring 2007).

3. TJC disclosed he was afraid of his mother, saw drugs in the home, marijuana was smoked in the room with him and that his mom would punch and hit him. RR-3 p. 116.

4. JJK admitted she began selling crack cocaine in January of 2014, after her second child (JAY) was born, and would have continued selling had they never knocked on her door. RR-3 p. 32-33.

5. When the Department removed the children from that situation in 2014, JAY was only 2 and TJC was 7 and it was noted that the mother's discipline practices were violent and out of control. RR-4 p. 17.

6. The Department learned the mother had bipolar disorder and was abusing drugs. RR-4 p. 17; RR-3 p. 43-44 (JJK acknowledged diagnosed with bipolar and on meds).

7. The Department learned JJK allowed the children to be inadequately supervised while she and others used drugs around them. RR-4 p. 17; RR-3 p. 116.

8. JJK has two prior abuse/neglect investigations by CPS before the 2014 removal, and by the time of this removal, the children had been in CPS custody three times in their lives. RR-3 p. 48; RR-4 p. 17. Also, during the Department's experience, JJK used another person's urine to pass a drug test. RR-4 p. 16.

9. JJK continued illegal drug use after this case was filed and did not successfully complete her plan of service ordered for reunification. RR-4 p. 138-51; RR-2 p. 15-16; RR-3 p. 11-12; RR-3 p. 14-16; RR-3 p. 99 and pp. 110-14.

In particular, the above facts established JJK knowingly engaged in illegal drug activities, violent and negligent parenting practices that exposed the children to an unsafe home, and endangered them by exposing them to the possibility their mother would be impaired or incarcerated due to drug use and selling crack cocaine while these children were under her care. Such practices proved she knowingly placed her children in dangerous surroundings and jeopardized their well being for findings under both Subsections D and E. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("We … agree that a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct."); *See also In re D.J.W.*, 394 S.W.3d 210, 221 (Tex. App.―Houston [1st Dist.] 2012, pet. denied) (proof of a custodial parent's pattern of illegal drug use

constitutes endangering parental conduct because it exposes a parent to incarceration or impairment); *Latham v. Dep't of Family & Protective Servs*., 177 S.W.3d 341 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (though mother claimed she did not use drugs in front of the children; affirmed finding under Ground E based on her history of drug use and her continuation of drug use even after her parental rights were in jeopardy after the children were removed). *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) (abusive conduct as well as illegal drug use and criminal activity supports a finding of conduct that endangers a child's environment by permitting unsafe circumstances for findings under both D and E).

In addition, her decision to do engage in illegal drug behaviors while suffering a bipolar condition as well as her continuation of illegal drug use and noncompliance with the court's order for reunification while this case was pending further established the proof of her dangerous course of conduct for the court's finding under Subsection E. *In re S.R.*, No. 14-14-00393-CV, 2014 WL 5898453 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (continued drug use after removal is conduct that jeopardized parental rights and may be considered as proof of a dangerous course of conduct); *Lathan v. Dept of Fam. & Prot. Servs.*, 177 S.W.3d 341, 348 (Tex. App.—Houston [1st Dist.[ 2005, no pet.) (parent's continuation of drug use after birth of children and when parental rights in jeopardy considered in

endangerment finding); *Callahan v. Brazoria County Child Prot.Servs. Unit.*, 2003 WL 2199952 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("jury was able to consider testimony of .. imprisonment, criminal history, drug use, violent acts …, suicide attempts and mental condition" in support of Subsection E); *See also generally In re B.H.*, No. 01-10-00415-CV, 2011 WL 4501940 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (because children need stability and permanence, conduct that subjects a child to a life of uncertainty and instability endangers a child's physical and emotional well-being). As these facts were mostly undisputed, this evidence conclusively established the trier of fact's findings.

**3) Though review of O ground is unnecessary JJK's admission that she violated her court ordered service plan by engaging in illegal drug use and failing to complete tasks supported the court's finding under subsection (O).**

Because only one predicate finding under Section 161.001(1) of the Family Code was necessary to support the court's parental termination decision with respect to JJK and the findings of Subsections D and E were proven conclusively, the court's other predicate finding, Subsection O, need not be reviewed. *See In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003). Moreover, because this finding was not challenged in this appeal, it is binding for this court's review of the facts in this appeal. *See In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). However, because it is relevant for review of the best interest finding, it should be mentioned.

Under Subsection O, a trial court must find by clear and convincing evidence that the parent failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child. Tex. Fam. Code Ann. 161.001(1)(O) (West 2008). The evidence at trial proved this subsection conclusively, because the evidence established JJK continued illegal drug activities and not complete drug treatment in violation of the tasks in her court ordered plan of service, her children were removed as a result of her neglectful irresponsible and illegal behaviors, as already discussed above, and her children remained in the Department's care for at least nine months. RR-3 p. 14-16 and 95; RR-4 p. 17.

**4) The evidence supporting the court's findings under Subsections D, E and O of Section 161.001(1) of the Family Code adequately supported the court's finding that termination was in the children's best interest.**

The phrase "best interest of the child" is not statutorily defined. However, in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976), the Texas Supreme Court recognized a non-exhaustive list of factors to consider in this evaluation including: a child's physical and emotional needs, emotional and physical danger to the child, parental abilities, programs to assist in promoting the child's best interest, plans by

those seeking custody, stability of the home, improper parental acts and any excuse for the improper acts or omissions by the parents. Also, besides these factors, Section 263.307 of the Family Code directs that the prompt and permanent placement of a child in a safe environment is in a child's best interest and list numerous factors in evaluating a parent's willingness to provide that safe environment. *See* Tex. Fam. Code Ann. §263.307 (West 2008). Of those numerous factors, the ones listed at Subsections (b)(1), (8), (10), (11) and (12) seem most relevant to the facts in this case. Namely, those factors consider (1) the children's age (2) substance abuse issues, (3) willingness to undergo counseling and cooperate under agency supervision (4) willingness to effect positive changes and (5) demonstration of adequate parenting skills, including the ability to provide for a child's basic needs in a safe environment. *Id.* at §263.307(b). While there are obviously many factors to consider, the single question in the parental termination context boils down to the best interest of the child. The facts in this case supported the trial court's conclusion that termination of the parental rights of JJK was in the children's best interest.

As already discussed, one of the primary safety issues that brought the children into care had to do with JJK's illegal drug activities prior to the removal of the children, as well as continued drug use after the court ordered her to refrain from illegal actions as a condition of reunification. Those facts, as already

discussed above, established that DLB maintained behaviors neglectful to her children's well-being for the findings under D and E. Such facts also supported the court's finding that parental termination was in the child's best interest. *See In re A.L.W.*, No. 01-14-00805-CV, 2015 WL 4262754 *12 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (mem. op.) (parental drug use reflects poor judgment and can demonstrate parent's inability to care for child and instability in home); *P.W. v. Dept of Fam. & Prot. Servs.*, 403 S.W.3d 471, 479 (Tex. App.—Houston [1st Dist.] 2013, pet. dism'd w.o.j.) (drug use can prove instability); *In re I.R.,* 2014 WL 6854747 *8 (Tex. App. – Houston [14th Dist.] 2014, no pet.) ("A parent's drug use supports a finding that termination is in the best interest of the child.") (mem. op.).

Moreover, the facts in support of the finding under Subsection O that established JJK violated her plan of service by continuing illegal drug behaviors and tasks related to that concern was another fact that supported the court's finding. See *In re E.C.R.,* 402 S.W.3d 239, 249 (Tex. 2013) ("Many of the reasons supporting termination under subsection O also support the trial court's best interest finding); *In re A.L.W.,* 2015 WL 4262754 *12 (if a parent fails to complete services for reunification, a factfinder may infer the parent lacks motivation to seek out necessary resources for that purpose now or in the future). Further, this fact was likely particularly significant in the court's analysis considering these young

children had already been in CPS care three times in their lives, and JJK acknowledged that was not fair to them. RR-3 p. 48.

In the mean time, while JJK's continued in irresponsible parental behavior, her children acquired a good home for several months with a grandparent who provided for all their needs and was committed to providing the children safety and permanency and was willing to adopt. RR-3 pp. 96, 103, 130, 132. Because the need for permanence is a paramount consideration in determining a child's present and future needs, the court had more than sufficient basis to find termination of JJK's parental rights was in the child's best interest. *See Jordan v. Dossey*, 325 S.W.3d 700, 731 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). The evidence in support of the court's finding was sufficient.

Appellant's Brief suggests that the evidence is not factually sufficient, because the maternal grandfather father did not want to adopt the children. That is not exactly accurate. The evidence illustrates that the grandfather was more than willing to adopt but would have preferred that the parents have gotten their act together. RR-3 p. 130. He stated he would like to see his daughter get off drugs and get her kids back and he had several conversations with her. RR-3 p. 131. In addition, regardless of whether the grandparent was willing to adopt or not, that factor would not be dispositive in the situation of this case where the decision of adoption was not yet before the court. In deciding best interest in a parental

termination case, evidence about permanent placement and adoption considerations at the time a parental termination may be relevant, but is cannot dispositive when the Department does not have a definitive plan for adoption. *See In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002). Accordingly, this fact does not outweigh the trial court's determination on the facts in this case. Consequently, there is no basis to conclude the trial court's finding lacked sufficient evidence. It should be affirmed.

WHEREFORE, PREMISES CONSIDERED, Appellee Department of Family & Protective Services requests that this court affirm the trial court's judgment and for such other and further relief to which it may be entitled in law or in equity.

Respectfully submitted,
VINCE RYAN
COUNTY ATTORNEY

By: */s/ Sandra Hachem*
**Sandra Hachem**
Assistant County Attorney
State Bar #08667060
1019 Congress, 17th Floor
Houston, Texas 77002
Phone: 713/274-5293; Fax: 713/437-4700
Email: Sandra.Hachem@cao.hctx.net
Attorney for Appellee,
Department of Family & Protective Services

## CERTIFICATE OF SERVICE

I hereby certify that on this the 18th day of August, 2015 a true and correct copy of the foregoing Appellee's brief was sent to all parties to this appeal by sending a copy of this brief by (1) electronic transmission to:

Appellant, DLB
c/o her attorney of record Donald Crane
By email at: donmcrane@gmail.com

and

the Attorney ad Litem for the Children
Susan Ryan Solis by fax at her
Fax number: 832/661-7946

*/s/ Sandra Hachem*
Sandra Hachem

## CERTIFICATE OF COMPLIANCE OF NUMBER OF WORDS

This is to certify, pursuant to Tex. R. App. P. 9.4(i)(3), that the foregoing computer generated brief consists of no more than 15,000 words, excluding the caption, identify of parties and counsel, table of contents, index of authorities, statement of the case, statement of issues presented, statement of procedural history, signature, proof of service, certification, certificate of compliance and appendix. Relying on the word count of the computer program used to prepare this document, the number of words, subject to count under the rules, is 8,785 words.

*/s/ Sandra Hachem*
Sandra Hachem

**No. 01-15-00469-CV**

_____

**IN THE COURT OF APPEALS
FOR THE FIRST JUDICIAL DISTRICT
OF TEXAS AT HOUSTON**

_____

**IN THE INTEREST OF
J-M. A.Y., Child**

_____

**J.J.K. Appellant**

**v.**

**DEPARTMENT OF FAMILY & PROTECTIVE SERVICES, Appellee**

_____

**APPENDIX**

_____

Affidavit of Removal- Image #60049932 ……………………….Attachment 1

Order Setting Hearing – Image #60049933 …………………………Attachment 2

Temporary Order Following Adversary Hearing –
      Image #60802353 …………………………………………Attachment 3

Order for Drug / DNA Screening - #60340835………………………..Attachment 4

**Tab 1**
**Affidavit of Removal- Image #60049932**

**2014-01481J / Court: 313**

DONNA LOVINGS
LOREE GEISEIHART

CAUSE NO. _____

<table>
<tr><td>IN THE INTEREST OF</td><td>IN THE DISTRICT COURT OF</td></tr>
<tr><td>T▆▆▆▆ C▆▆▆▆<br>J▆▆▆ Y▆▆▆▆</td><td>HARRIS COUNTY, TEXAS</td></tr>
<tr><td>CHILDREN</td><td>_____ JUDICIAL FAMILY/JUVENILE<br>DISTRICT</td></tr>
</table>

## AFFIDAVIT

STATE OF TEXAS

COUNTY OF HARRIS

BEFORE ME, the undersigned authority, personally appeared **DONNA LOVINGS**, who was sworn by me and deposed as follows:

"My name is **DONNA LOVINGS**. I am of sound mind and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

1. **Information to be Submitted to the Court Pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act**

   "The present placement of T▆▆▆▆ C▆▆▆ the subject of this suit is: **OWN HOME**

   The present placement of J▆▆▆ Y▆▆▆ the subject of this suit is: **OWN HOME**

   At this time, all the places where the children have lived during the last five years and all the names and present addresses of the persons with whom the children have lived during the period are currently not reasonably ascertainable. The Department will continue their investigation and attempt to discover the information.

   To the best of my knowledge, the Department:

   Has not participated in any capacity in any other litigation concerning the custody of the children in this or any other state;

   Does not have information of any proceeding concerning the children pending in a court of this or any other state;

   Does not know of any person not a party to the proceedings who has physical custody of the children or who claims to have custody or visitation rights with respect to the children."

Original Petition for Protection of a Child for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship and Order Setting Hearing
Page 15

(zenab)
March 18, 2014

For Official Governmental Use Only - Do Not Disseminate to the Public: 60049932 - Page 1 of 6

For Official Governmental Use Only - Do Not Disseminate to the Public: 60049932 - Page 2 of 6

2.    **Interstate Compact on the Placement of Children**

"At the time of the filing of this petition, an interstate placement is not planned, but the Department of Family and Protective Services will comply with all requirements of the Interstate Compact on the Placement of Children as set forth in Chapter 162, Subchapter B, Texas Family Code.

3.    **Facts Necessitating Removal of the Children**

"I have made reasonable efforts under the circumstances to prevent removal of the child but considering the immediate needs to protect the child, removal of the child is necessary."

**Present Referral - Allegation**

On March 3, 2014, the Department of Family and Protective Services (the Department) received a referral alleging the neglectful supervision of T▇▇▇ C▇▇▇ by the mother, J▇▇▇K▇▇. The report alleged the mother allowed T▇▇▇ C▇▇ to go with an uncle to buy weed and that the mother is smoking marijuana while the children are present. The mother has history of mental illness and is not on her medication. The report also alleges when the mother has taken drug tests for the Department in the past, she has used other people's urine in order to pass the drug test.

**Summary Conclusion**

Due to the neglectful supervision of the children at the hands of their mother, the Department believes that it is contrary to the children's welfare to remain in the care of J▇▇▇ K▇▇. The other admitted to smoking marijuana in the home with the children present. Ms. K▇▇ also admits to being diagnosed with bipolar and depression; she admitted to not taking her meds or continuing treatment for either mental illness. Ms. K▇▇ has worked two prior FBSS cases involving drug usage and mental illness. During the investigation, the mother was very aggressive and appeared out of control. She hit walls, cursed, and refused to cooperate with any interviews. Reasonable efforts have been made to prevent or eliminate the need for removal with the children having been placed with the maternal grandmother; however, because of the previous FBSS cases, it will be in the children's best interest for the Department to be named their Temporary Managing Conservator.

**Family Structure - Court History**



J▇▇▇ K▇▇ (born ▇▇▇▇) is the mother of:

T▇▇▇ C▇▇ (born ▇▇▇▇) who's adjudicated father is T▇▇▇ C▇▇ out of the Fort Bend County Child Support Court;

J▇▇▇ Y▇▇ (born ▇▇▇▇) who's alleged father is unknown.

Original Petition for Protection of a Child for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship and Order Setting Hearing
Page 16

(zenab)
March 18, 2014

## Investigation

On March 10, 2014, I entered the home with the permission from Ms. K███ and immediately smelled a strong odor of marijuana smoke while the children were present. I explained the allegation of the report and during the interview, Ms. K███ became very emotional and aggressive by hitting on the door and cursing loudly.

I first spoke with the oldest child, T█████ C████. The child disclosed that he's afraid of his mother because she curses him out and hits him with her fist in his arm. He stated that she also makes him do push ups and hits him with a hanger or belt in his side or stomach when he gets into trouble. T█████ denied he went with anyone to buy marijuana but stated his mother smokes weed in the home while he and his sibling are present. T█████ appeared to be generally healthy, clean, and adequately fed.

J█████ was not able to verbally communicate with the worker due to his age, but he appeared to be developmentally on target for an average child of his age. J█████ appeared to be generally healthy, clean, and adequately fed.

J█████ K███ would not cooperate with the interview and she continued to have outbursts. Ms. K███ would answer her phone, curse, and would not sit still long enough to hear the questions I asked. Ms. K███ admitted that she smokes marijuana off and on and that she would be willing to take a drug test. Ms. K███ asked if someone would be in the bathroom with her during her drug test and she was notified there would be a monitor. Ms. K███ then stated she would not pass her drug test. She stated she was going to MHMRA and check herself into a hospital because CPS is going to take her children because she is off her medication.

On March 14, 2014, I was informed the maternal grandmother, R█████ J█████, had both children in her possession.

On March 17, 2014, I made a home visit to the maternal grandmother, Ms. R█████ J█████. Ms. K███ was also present at the home during my visit. I spoke Ms. K███ who stated she was recently released from the hospital because she diagnosed with Bipolar. Ms. K███ would not provide any information regarding what hospital she had been at and was again very aggressive. She admitted to using marijuana in her home while the children were present but denied using in the same room. The Department's concerns were explained to Ms. K███ and the need for the children to be placed in a safe environment outside of her care. After some time, Ms. K███ agreed to allow her mother, Ms. R█████ J█████, to serve as a Parental Child Safety Placement.

The father, T█████ C████, currently has pending charges out of the 176th Judicial District Court of Harris County that include Reckless Injury to a Child and Assault Causing Bodily Injury to a Family Member filed on January 13, 2014. The father also has a long and concerning criminal history involving drugs. Mr. C████ will not be an appropriate placement at this time.

For Official Governmental Use Only - Do Not Disseminate to the Public: 60049932 - Page 3 of 6

Original Petition for Protection of a Child for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship and Order Setting Hearing
Page 17

(zenab)
March 18, 2014

## CPS History

### 8/6/09-10/5/09

Reason To Believe for Neglectful Supervision of T███ C███ by J███ K███

**The Intake**: Today 8/6/09 Ms. K███, her boyfriend, and child, T███, were all in a vehicle together driving in Houston when they were pulled over by police at a traffic stop. Mother and paramour were both under the influence of marijuana and drugs were found in the car. Marijuana and pills (believed to be Vicodin) were found by canine search. It appeared that the adults were selling drugs out of this vehicle and were both arrested. The mother "has been in trouble for drugs before."

**The Investigation**: The mother was being arrested for drugs while T███ was present in the vehicle. The mother tested positive for marijuana and is currently taking prescription medications for bipolar and anxiety. T███ will remain in the home of F███ K███-J███ while family participates in FBSS services.

**Reason for Closure**: The mother was under the influence of drugs while caring for 2yo child. The mother placed 2yo in danger in vehicle full of drugs. The mother was arrested and the 2yo was placed with maternal grandmother. The case was closed because risk had been greatly reduced since Ms. K███ successfully completed all requirements that the agency had imposed on her. She has also tested negative on all urinalysis and hair follicle test.

### 8/15/12-1/17/13

Reason To Believe for Neglectful Supervision of T███ C███, child, by J███ K███ and T███ C███ and Reason To Believe for Neglectful Supervision of J███ Y███ by J███ K███.

**The Intake**: Father took the child, T███, to a pool at the apartments. Father was talking to a cousin and when he turned around and saw that T███ was completely underwater in the three foot six inches depth of the pool. Father jumped in the pool pulled T███ out and began to perform CPR while calling 911. T███ was taken to Memorial Hermann Medical Center by ambulance. The father did not know how long T███ had been underwater. The father refused to discuss names of other people involved or witnesses because he did not want to look like a bad parent.

**The Investigation**: J███ K███ has mental health issues and missed her last appointment. She is currently not taking her medications and also tested positive for marijuana. T███ C███ tested positive for marijuana in August 2012. The children are safe in the PCSP with their grandmother. The children were placed in a PCSP with their maternal grandmother. A safety plan was put into place. The case was referred to Family Based Safety Services.

**Reason for Closure**: The FBSS case was closed because safety factors had been eliminated from the family. Ms. K███ has been negative for drugs since December 2012. Ms. K███ reported that she will be supervising all contact between T███ and his father, as she does not trust him to keep their son safe.

For Official Governmental Use Only - Do Not Disseminate to the Public: 60049932 - Page 4 of 6

Original Petition for Protection of a Child for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship and Order Setting Hearing
Page 18

(zenab)
March 18, 2014

11/8/13-12/22/13

**The Intake:** 6yo was hit in the private parts by mother as punishment. Mother is engaging in inappropriate discipline. Circumstances indicate physical abuse. 6yo has behaviors indicative of sexual molestation. Mother has been off her psych medications for 5 months. Mother is bipolar, very aggressive, and hostile. Mother is providing inadequate physical care for 6yo and 2yo while off her medications.

**The Investigation:** T█████ made no outcry of abuse or neglect. He stated that his mom hit is private part by accident because she thought he was hiding under his covers in his bed face down but he was hiding face up. Ms. K██ stated that T████ had been having behavioral issues and she sent him to his father yesterday. She stated his god sister caught him in the act or about to give another child oral sex. She stated she couldn't handle that. She also stated that she had been off her medication for a while because the medication that MHMRA had her on it made her sick. MHMRA drug tested Ms. K██ on 3 separate occasions and she tested negative.

**Outcome:** The mom agreed to let the child go with his father until she gets stable on her medication and the case was closed.

### Criminal History

J█████ K██  - mother

In the state of Texas:

| | |
|---|---|
| 6/23/2009 | POSS CS PG 3< 28G |
| | POSS DANGEROUS DRUG |
| 8/6/2009 | POSS MARIJ < 2OZ |
| 8/16/2011 | TRAFFIC OFFENSE CLASS C |

Tarence Carter- Father to Tarence Carter

| | |
|---|---|
| 5/31/1982 | JUVENILE; |
| 8/8/1998 | THEFT PROP>=$50 < $500; |
| 5/22/2000 | POSS MARIJ < 2OZ; |
| 8/4/2000 | EVADING ARREST/DET SBI; |
| | POSS MARIJ <= 2 OZ DRUG FREE ZONE; |
| | RESIST ARREST SEARCH OR TRANSP; |
| 9/30/2000 | POSS MARIJ <= 2 OZ DRUG FREE ZONE; |
| 10/14/2003 | POSS MARIJ < 2OZ; |
| 11/2/2004 | DRIVING WHILE LIC SUSPENDED/SR; |
| 3/9/2005 | TAMPERING/FABRICATING PHYSICAL EVIDENCE; |
| | POSS MARIJ < 2OZ; |
| | DRIVING WHILE LIC INVALID ENH; |
| 8/26/2006 | TAMPERING W/ CONSUMER PROD THREA;T |
| | POSS MARIJ <= 2 OZ DRUG FREE ZONE; |
| | EVADING ARREST/DETENTION; |
| 10/28/2006 | CRIMINAL TRESPASS; |

For Official Governmental Use Only - Do Not Disseminate to the Public: 60049932 - Page 5 of 6

Original Petition for Protection of a Child for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship and Order Setting Hearing
Page 19

(zenab)
March 18, 2014

For Official Governmental Use Only - Do Not Disseminate to the Public: 60049932 - Page 6 of 6

| 12/31/2006 | EVADING ARREST/DETENTION; |
| | CRIM MISCH>=$500<$1,500; |
| 4/2/2007 | POSS MARIJ < 2OZ; |
| 9/27/2008 | TAMPERING/FABRICATING PHYSICAL EVIDENCE; |
| 3/13/2009 | CRIMINAL MISCHIEF>$50<$500; |
| | INTERFER W/EMERGENCY CALL; |
| 5/5/2009 | ASSAULT CAUSES BODILY INJURY FAMILY MEMBER; |
| 6/8/2009 | MAN/DEL CS PG 3/4 < 28G DRUG FREE ZONE; |
| | POSS MARIJ <= 4 OZ > 2 OZ DRUG FREE ZONE; |
| 1/12/2011 | POSS MARIJ <= 2 OZ DRUG FREE ZONE; |
| 3/4/2011 | DRIVING W/LIC INV W/PREV CONV/SUSP/W/O FIN RES; |
| 11/13/2011 | DRIVING W/LIC INV W/PREV CONV/SUSP/W/O FIN RES; |
| 1/12/2014 | ASSAULT FAMILY MEMBER-TWO TIMES; |
| | I/K INJURY TO CHILD BI. |

**Available Relative Placements**

The children are currently placed in a Parental Child Safety Placement with Maternal Grandmother, Rhonda Johnson.

**Conclusion and Requested Relief**

Due to the neglectful supervision of the children at the hands of their mother, the Department believes that it is contrary to the children's welfare to remain in the care of J███ K██. The other admitted to smoking marijuana in the home with the children present. Ms. ████ also admits to being diagnosed with bipolar and depression; she admitted to not taking her meds or continuing treatment for either mental illness. Ms. K██ has worked two prior FBSS cases involving drug usage and mental illness. During the investigation, the mother was very aggressive and appeared out of control. She hit walls, cursed, and refused to cooperate with any interviews. Reasonable efforts have been made to prevent or eliminate the need for removal with the children having been placed with the maternal grandmother; however, because of the previous FBSS cases it will be in the children's best interest for the Department to be named their Temporary Managing Conservator.

**Donna Lovings**

SIGNED under oath before me on the 18TH day of MARCH, 2014.

Notary Public in and for the State of Texas

My commission expires: 6/4/16

JONATHAN CHAN
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
06-04-2016

**THIS PAGE WITH ORIGINAL SIGNATURES AND NOTARY STAMP IS MAINTAINED IN THE PETITIONER / MOVANT'S LEGAL FILE**

Original Petition for Protection of a Child for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship and Order Setting Hearing
Page 20

(zenab)
March 18, 2014



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   August 14, 2015

Certified Document Number:        60049932 Total Pages:  6

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**Tab 2**
**Order Setting Hearing – Image #60049933**

**2014-01481J / Court: 313**

DONNA LOVINGS
LOREE GEISEIHART

CAUSE NO. _____

| | |
|---|---|
| IN THE INTEREST OF | IN THE DISTRICT COURT OF |
| T\_\_\_\_\_ C\_\_\_\_\_ <br> J\_\_\_\_ Y\_\_\_\_ | HARRIS COUNTY, TEXAS |
| CHILDREN | \_\_\_\_ JUDICIAL <br> FAMILY/JUVENILE DISTRICT |

### ORDER SETTING HEARING AND APPOINTMENT
### OF GUARDIAN/ATTORNEY *AD LITEM*

The *Original Petition for Protection of a Child for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship and Order Setting Hearing* filed by the Department of Family and Protective Services is set for hearing as follows.

1.  **IT IS ORDERED** that the Clerk of this Court shall issue notice to Respondents J\_\_\_\_ K\_\_\_\_ and T\_\_\_\_ C\_\_\_\_ to appear, and Respondents are **ORDERED** to appear in person before this Court, in The Juvenile Justice Center, 1200 Congress, Houston, Texas, on ___4-1-14___, at ___1.15___ o'clock _p.m.. The purpose of the hearing is to determine whether the Department's request for temporary orders in this case should be granted.

2.  **IT IS ORDERED** that each Respondent to this cause provide to the Department and the Court the full name and current address or whereabouts and phone number of any absent parent of the children the subject of this suit, pursuant to Rule 194, Texas Rules of Civil Procedure.

3.  **IT IS ORDERED** that each Respondent to this cause submit the Child Placement Resources Form provided under §261.307, Texas Family Code and provide to the Department and the Court the full name and current address or whereabouts and phone number of any relative of the children the subject of this suit with whom the Department may place the children during the pendency of this suit, pursuant to Rule 197, Texas Rules of Civil Procedure and §262.201(e), Texas Family Code.

4.  **IT IS ORDERED** that each parent of the children the subject of this suit furnish to the Department and the Court information sufficient to accurately identify that parent's net resources and ability to pay child support along with copies of income tax returns for the past two years, any financial statements, bank statements, and current pay stubs, pursuant to Rule 196, Texas Rules of Civil Procedure and §154.063, Texas Family Code.

5.  **IT IS ORDERED** that each parent of the children the subject of this suit provide to the Department and the Court evidence of health insurance available for the children, pursuant to Rule 196, Texas Rules of Civil Procedure and §154.182, Texas Family Code.

6.  **IT IS ORDERED** that each Respondent provide the Department and the Court information sufficient to establish the parentage and immigration status of the children, including but not limited to marriage records, birth or death certificates, baptismal records, social security cards, records of

lawful permanent residence ("green cards"), naturalization certificates, and any other records of the United States Citizenship and Immigration Services and records of Indian ancestry or tribal membership.

7. **IT IS ORDERED** that each Respondent furnish to the Department all information necessary to ensure the Department has an adequate medical history for the children, including but not limited to the immunization records for the children and the names and addresses of all treating physicians. **IT IS FURTHER ORDERED** that .each parent provide information regarding the medical history of the parent and parent's ancestors on the medical history report form pursuant to §161.2021, Texas Family Code.

8. **IT IS ORDERED** that all of the information required above be provided as ordered no later than the date of the full adversary hearing held in this cause.

9. **THE COURT FINDS** that this is a suit brought by a governmental agency seeking termination of the parent-child relationship or to be named managing conservator. The Court therefore appoints _____ as guardian/attorney *ad litem* to represent the interests of the children for the purpose of this suit.

10. **Dismissal Date and Notice of Status Hearing**

    **Pursuant to §263.306(11), Texas Family Code, the Court determines that the date for dismissal of this cause shall be _____.**
    **IT IS ORDERED that this cause is set for a Status Hearing, pursuant to §263.201 Texas Family Code, on _____ at _____ o'clock __.m..**
    **IT IS FURTHER ORDERED that this cause is set for a Permanency Hearing, pursuant to §263.304 Texas Family Code, on _____ at _____ o'clock __.m..**
    **These hearings shall be held in the _____ Judicial District Court of Harris County in Houston, Texas.**

SIGNED this _____ day of _____, 2014.


**MAR 1 8 2014**
SIGNED this _____ day of _____, 2014.

MASTER OF THE COURT

JUDGE PRESIDING

(zenab)
March 18, 2014



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   August 12, 2015

Certified Document Number:        60588927 Total Pages:  2

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**Tab 3**
**Temporary Order Following Adversary Hearing –**
**Image #60802353**

**2014-01481J / Court: 313**

DONNA LOVINGS
LOREE GEISEIHART

CAUSE NO. _____

IN THE INTEREST OF

T. ████ C████
J████ Y████

CHILDREN

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

_____ JUDICIAL
FAMILY/JUVENILE DISTRICT

**TEMPORARY ORDER FOLLOWING ADVERSARY HEARING**

On  **APR 0 1 2014** _____, a full adversary hearing pursuant to §262.201 or 262.205, Texas Family Code, was held in this cause.

1. **Appearances**

1.1. The Department of Family and Protective Services ("the Department") appeared through **DONNA LOVINGS**, caseworker, and by attorney **AMELIA B. STRICKLING** and announced ready.

1.2. Respondent MOTHER J████ K████
☑ appeared in person and announced ready.
☐ appeared through attorney of record and announced ready.
☐ appeared in person and through attorney of record and announced ready.
☐ waived issuance and service of citation by waiver duly filed.
☐ agreed to the terms of this order as evidenced by signature below.
☐ although duly and properly notified, did not appear and wholly made default.
☐ was not notified, and did not appear.

1.3. Respondent ALLEGED FATHER T████ C████
☑ appeared in person and announced ready.
☐ appeared through attorney of record and announced ready.
☐ appeared in person and through attorney of record and announced ready.
☐ waived issuance and service of citation by waiver duly filed.
☐ agreed to the terms of this order as evidenced by signature below.
☐ although duly and properly notified, did not appear and wholly made default.
☐ was not notified, and did not appear.

For Official Governmental Use Only - Do Not Disseminate to the Public: 60049934 - Page 1 of 8

1.4.    Respondent **UNKNOWN FATHER**
☑ appeared in person and announced ready.
☐ appeared through attorney of record and announced ready.
☐ appeared in person and through attorney of record and announced ready.
☐ waived issuance and service of citation by waiver duly filed.
☐ agreed to the terms of this order as evidenced by signature below.
☐ although duly and properly notified, did not appear and wholly made default.
☐ was not notified, and did not appear.

1.5.    Susan Solis , appointed by the Court as Attorney and Guardian Ad Litem of the children the subject of this suit,
☐ appeared and announced ready.
☐ agreed to the terms of this order as evidenced by signature below.
☐ although duly and properly notified, did not appear.

1.6.    Also Appearing ▓▓▓ Y▓▓▓ (father of J▓▓▓),
Paternal family, maternal family, placement

## 2. Jurisdiction

2.1.    The Court, after examining the record and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been satisfied and that this Court has jurisdiction of this case and of all the parties.

2.2.    The Court further finds that the State of Texas has jurisdiction of this case pursuant to Subchapter C, Chapter 152, Texas Family Code, and because Texas was the home state of the children on the date of the commencement of this proceeding, and there is no prior child custody determination in another state.

## 3. Findings

3.1.    The Court finds sufficient evidence to satisfy a person of ordinary prudence and caution that there is a continuing danger to the physical health or safety of the children and for the children to remain in the home is contrary to the welfare of the children.

3.2.    The Court finds with respect to the T▓▓▓ C▓▓▓ AND J▓▓▓ Y▓▓▓ that reasonable efforts consistent with the children's health and safety have been made by the Department to prevent or eliminate the need for removal of the children from the home and to make it possible for the children to return home, but that continuation in the home would be contrary to the welfare of the children.

3.3.    The Court finds that the following orders for the safety and welfare of the children are in the best interest of the children.

## 4. Appointment of Counsel for Parents or Parties

4.1. The Court finds that J██████ K███ is/ **is not indigent.** Based on the finding that J██████ K███ is not indigent and pursuant to §107.015 of the Texas Family Code, **IT IS ORDERED** that J██████ K███ is responsible to pay a reasonable fee in the amount set by the Court by separate order to the attorney ad litem appointed to represent the children, T██████ C██████ AND J██████ Y██████

4.2. The Court finds that T██████ C██████ is/ **is not indigent.** Based on the finding that T██████ C██████ is not indigent and pursuant to §107.015 of the Texas Family Code, **IT IS ORDERED** that T██████ C██████ is responsible to pay a reasonable fee in the amount set by the Court by separate order to the attorney ad litem appointed to represent the children, T██████ C██████.

The Court makes no finding with regard to the indigency of Respondent J██████ K██████ because said Respondent is not presently before the Court and/or insufficient information is available to make such a determination at this time.

## 5. Appointment of Single Counsel for Both Parents

The Court finds that the interests of both indigent parents who have responded in opposition to the termination of the parent-child relationship are not in conflict, and therefore has appointed a single attorney *ad litem* to represent the interests of both parents.

## 6. Conservatorship

6.1. **IT IS ORDERED** that the Department of Family and Protective Services is appointed Temporary Managing Conservator of the following children:

Name: T██████ C██████
Sex: MALE
Date for Birth: ████████████
Indian Child Status: UNKNOWN

Name: J██████ Y██████
Sex: MALE
Date for Birth: ████████████
Indian Child Status: UNKNOWN

6.2. **IT IS ORDERED** that the Temporary Managing Conservator shall have all the rights and duties set forth in §153.371, Texas Family Code.

6.3. The Court finds that it is in the best interest of the children to limit the rights and duties of each parent appointed as a temporary possessory conservator.

6.4. The Court makes no finding at this time with regard to the appointment of a Temporary Possessory Conservator.

⋈

6.5. **IT IS THEREFORE ORDERED** that ____TDFPS____ is appointed Temporary Possessory Conservator of the child, T██████ C██████ with the limited rights and duties set forth below.

6.6. **IT IS THEREFORE ORDERED** that ____TDFPS____ is appointed Temporary Possessory Conservator of the child, J██████ Y██████ with the limited rights and duties set forth below.

7. **Rights and Duties of Temporary Possessory Parent**

7.1. Each Temporary Possessory Conservator appointed in this Order shall have the following rights:

   7.1.1. the right to receive information concerning the health, education, and welfare of the children;

   7.1.2. the right to access to medical, dental, psychological, and educational records of the children;

   7.1.3. the right to consult with a physician, dentist, or psychologist of the children;

   7.1.4. the right to consult with school officials concerning the children's welfare and educational status, including school activities;

   7.1.5. the right, during times of unsupervised possession, to consent for the child to medical, dental, and surgical treatment during an emergency involving immediate danger to the health and safety of the children;

   7.1.6. the right, during times of possession, to direct the moral and religious training of the children;

   and the right to _____

   _____

   _____

   _____

7.2. Each Temporary Possessory Conservator appointed in this Order shall have the following duties:

   7.2.1. the duty, during periods of possession of the children which are not supervised by the Department or its designee, of care, control, protection, and reasonable discipline of the children;

   7.2.2. the duty to support the children, including providing the children with clothing, food, and shelter during periods of possession of the children which are not supervised by the Department or its designee;

For Official Governmental Use Only - Do Not Disseminate to the Public: 60802353 - Page 5 of 8
For Official Governmental Use Only - Do Not Disseminate to the Public: 60049934 - Page 5 of 8

and the duty to _____

_____

_____

_____

_____

**7.3.    Possession of and Access to the children**

7.3.1.    The Court finds that the application of the guidelines for possession of and access to the children, as set out in Subchapter F, Chapter 153, Texas Family Code, is not in the children's best interest. **IT IS ORDERED** that the parent named as temporary possessory conservator of the children shall have limited access to and possession of the children as set forth below.

The Court finds that the parents shall have the right to visitation with the children in accordance with the policy established by Department of Family and Protective Services and at all other times mutually agreeable to the Temporary Managing Conservator and the parents of said children.



7.3.2.    **IT IS ORDERED** that each Temporary Possessory Conservator appointed in this Order shall have visitation with the children as follows:



**8.    Child Support**

The Court finds that the parents have a duty to support the child the subject of this suit.

**IT IS ORDERED** that child support shall be paid as set out in Exhibit A attached hereto and incorporated fully herein.



The Court makes no finding at this time with regard to the payment of child support.

**IT IS ORDERED** that any child support ordered to be paid for the support of the children as a result of any prior court order be ordered to be redirected and paid to the Texas Department of Family and Protective Services.

### 9. Release of Medical and Mental Health Records

**IT IS ORDERED** that Respondents J█████ K█ and T█████ C█████ execute an authorization for the release of Respondents', and the children's (if needed) past, current or future medical and mental health records to the Department from all physicians, psychologists, or other health care professionals, who have treated Respondents or their children which information the Department shall be authorized to share with all other groups or persons it deems necessary; and to further provide the Department with a list of the names and addresses of all physicians, psychologists, or other healthcare providers who have treated Respondents or the children.. Respondents shall execute the authorization and deliver it, together with the list of physicians, psychologists, or other healthcare providers , to the Department within 15 days of the date of this hearing.

### 10. Required Home Study

10.1. The Court finds that Respondent Mother, J█████ K█ , has/has not submitted the Child Placement Resources Form required under §261.307, Texas Family Code.

10.2. The Court finds that Respondent Father, T█████ C█████ has/has not submitted the Child Placement Resources Form required under §261.307, Texas Family Code.

10.3. **IT IS ORDERED** that each Parent, Alleged Father or Relative of the subject children before the Court submit the Child Placement Resources Form provided under §261.307, if the form has not previously been provided and provide the Department and the Court the full name and current address or whereabouts and phone number of any and all relatives of the subject children the subject of this suit with whom the Department may place the subject children during the pendency of this suit, pursuant to § 262.201, Texas Family Code.

10.4. **IT IS ORDERED** that the Department shall continue to evaluate substitute caregiver options until the Department identifies a relative or other designated individual qualified to be a substitute caregiver.

10.5. **IT IS ORDERED** that the Department shall conduct a home/social study on _____, if preliminary criminal and CPS background checks of all members of the household age 14 and up are favorable

### 11. Finding and Notice

**The Court finds and hereby notifies the parents that each of the actions required of them below are necessary to obtain the return of the children, and failure to fully comply with these orders may result in the restriction or termination of parental rights.**

### 12. Compliance with Service Plan

12.1. J█████ K█ is **ORDERED**, pursuant to § 263.106 Texas Family Code, to comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit.

12.2. T█████C█████ is **ORDERED**, pursuant to § 263.106 Texas Family Code, to comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit.

12.3. IT IS FURTHER ORDERED that:

_____

_____

_____

_____

_____

_____

**13. Required Information**

13.1. **IT IS ORDERED** that each Respondent to this cause provide to the Department and the Court, no later than thirty days from the date of this hearing, the information detailed below.

13.2. **IT IS ORDERED** that each Respondent to this cause provide to the Department ànd the Court the full name and current address or whereabouts and phone number of any absent parent of the children the subject of this suit, pursuant to Rule 194, Texas Rules of Civil Procedure.

13.3. **IT IS ORDERED** that each Respondent to this cause submit the Child Placement Resources Form provided under §261.307, Texas Family Code, if the form has not been previously provided and provide to the Department and the Court the full name and current address or whereabouts and phone number of any relative of the children the subject of this suit with whom the Department may place the children during the pendency of this suit, pursuant to Rule 197, Texas Rules of Civil Procedure. and §262.201(e), Texas Family Code.

13.4. **IT IS ORDERED** that each Parent furnish information sufficient to accurately identify that parent's net resources and ability to pay child support along with copies of income tax returns for the past two years, any financial statements, bank statements, and current pay stubs, pursuant to Rule 196, Texas Rules of Civil Procedure., and §154.182, Texas Family Code.

13.5. **IT IS ORDERED** that each Respondent provide the Department and the Court information sufficient to establish the parentage and immigration status of the children, including but not limited to marriage records, birth or death certificates, baptismal records, social security cards, records of lawful permanent residence ("green cards"), naturalization certificates, and any other record of the United States Citizenship and Immigration Services and records of Indian ancestry or tribal membership.

13.6. **IT IS ORDERED** that each Respondent furnish to the Department all information necessary to ensure the Department has an adequate medical history for the children, including but not limited to the immunization records for the children and the names and addresses of all treating physicians.

13.7. **IT IS ORDERED** that each Respondent provide the Department information regarding the medical history of the parent and parent's ancestors on the medical history report form, pursuant to §161.2021, Texas Family Code.

13.8. **IT IS ORDERED** that each Respondent to this cause provide to the Department and the Court a current residence address and telephone number at which each can be contacted.

13.9. **IT IS ORDERED** that each Respondent to this cause notify the Department and the Court of any change in his or her residence address or telephone number within five (5) days of a change of address or telephone number.

14. **Dismissal Date and Notice of Status Hearing**

Pursuant to §263.306(11), Texas Family Code, the Court determines that the date for dismissal of this cause shall be ____04 | 06 | 2015____.

IT IS ORDERED that this cause is set for a Status Hearing, pursuant to § 263.201 Texas Family Code, on ____May 6, 2014____ at ___1:15___ o'clock _P_.m. in the _213_ Judicial District Court of Harris County in Houston, Texas.

15. **All said TEMPORARY ORDERS shall continue in force during the pendency of this suit or until further order of the Court.**

SIGNED this ____ day of __APR 0 1 2014__, 2014.

__APR 0 1 2014__

SIGNED this ____ day of ____, 2014.

MASTER OF THE COURT

_____
JUDGE PRESIDING



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   August 12, 2015

Certified Document Number:        60802353 Total Pages:  8

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

**Tab 4**
**Order for Drug / DNA Screening - #60340835**

DONNA LOVINGS 362-5

**CAUSE NO. 2014-01481J**

IN THE INTEREST OF

~~FILED~~ ~~ORIGINAL~~

Chris Daniel
District Clerk
APR 01 2014
Time: 2:40pm
Harris County, Texas
By _____ Deputy

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

313TH JUDICIAL JUVENILE DISTRICT

T▆▆ C▆▆
J▆▆ Y▆▆

**CHILDREN**

**ORDER FOR DRUG / ALCOHOL / D.N.A. SCREENING**

The following person(s) are **ORDERED** to:

[  ] Report in person IMMEDIATELY to: National Screening Center
407 Fannin Street, 1st Floor, Houston, Texas 77002 (713) 226-7847;

[ X ] Remain in the Courtroom;

[  ] Allow National Screening Center to collect sample at _____

Each individual is **ORDERED** to remain in their respective location until samples have been drawn. Each individual named herein is ORDERED to provide such personal sample(s) as may be necessary for National Screening Center to perform the **ORDERED** Drug / Alcohol / D.N.A. screening as follows:

| NAME: | DOB | TDL/ID/SS# | TEST |
|---|---|---|---|
| 1. J▆▆ K▆▆ | ▆▆ | | [✓] UDS [✓] HAIR [  ] D.N.A. [✓] ETG [✓] Z.T. [✓] K2. [✓] Bath Salts |
| Relationship MOTHER | | [✓] Acolmprui | |
| 2. T▆▆ C▆▆ | | | [  ] UDS [  ] HAIR [  ] D.N.A. [  ] ETG [  ] Z.T. [  ] K2. [  ] Bath Salts |
| Relationship **ALLEGED FATHER of J▆▆Y▆▆** | | | |
| 3. J▆▆ A▆▆ Y▆▆ | DOB | SSN = xxx-xx-▆▆ | [✓] UDS [✓] HAIR [✓] D.N.A. [  ] ETG [  ] Z.T. [  ] K2. [  ] Bath Salts |
| Relationship Alleged father of J▆▆ | | x▆▆ | |

**(UDS = Urine Drug Screen; ETG = Alcohol Test; HAIR = Hair Follicle Drug; D.N.A. Paternity Testing; Z.T. = Zero Tolerance)**

It is further **ORDERED** that:  [  ] Each party named above is responsible and shall pay for each test administered

[ X ] The costs of the test shall be paid as follows: **HARRIS COUNTY**

The COURT reserves the right to re-allocate the costs of the test(s) between the parties. It is **ORDERED** that as soon as the results of the test(s) are available, National Screening **SHALL** fax OR deliver the results, with **CASE NUMBER**, to the 313th District Court at FAX # 713-222-4845 for filing with the court **under seal**. National Screening shall also provide the PRINTED NAME of the person transmitting the FAX results, the method(s) by which the person tested was identified and the date and time the sample was taken.

SIGNED ON: ___04/01/2014___

_____
**JUDGE**



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   August 12, 2015

Certified Document Number:         60340835 Total Pages:  1

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**